UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOTT THOROUGHBRED STABLES, INC.<br>58 SW Palm Cove Drive<br>Palm City, FL 34990<br><br>Plaintiff<br><br>v.<br><br>LEON RODRIGUEZ, Director<br>U.S. Citizenship and Immigration Services<br>20 Massachusetts Avenue, N.W.<br>Washington, DC 20529<br><br>JEH CHARLES JOHNSON, Secretary<br>U.S. Department of Homeland Security<br>650 Massachusetts Avenue, NW<br>Washington, DC 20001<br><br>RON ROSENBERG, Chief<br>U.S. Citizenship and Immigration Services<br>Administrative Appeals Office<br>20 Massachusetts Avenue, NW, MS 2090<br>Washington, DC 20529<br><br>CARRIE SELBY, Director<br>U.S. Citizenship and Immigration Services<br>Vermont Service Center<br>30 Houghton Street<br>St. Albans, VT 05478<br><br>Defendants | Civ. No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The Plaintiff, MOTT THOROUGHBRED STABLES, INC., through undersigned

counsel, complains of the Defendants, LEON RODRIGUEZ, Director, U.S. Citizenship and

Immigration Services; JEH CHARLES JOHNSON, Secretary, U.S. Department of Homeland

Security; RON ROSENBERG, Chief, U.S. Citizenship and Immigration Services Administrative

1

Appeals Office; and CARRIE SELBY, Acting Director, U.S. Citizenship and Immigration

Services Vermont Service Center, as follows:

## I. PREFATORY STATEMENT

1.      This is an action brought pursuant to Section 10b of the Administrative Procedure

Act, 5 U.S.C. § 702 and 28 U.S.C. § 1331, seeking review of a decision by Defendant U.S.

Citizenship and Immigration Services ("USCIS") denying the Plaintiff's Form I-129 Petition for

Nonimmigrant Worker ("O-1B Petition"), which sought to grant temporary nonimmigrant status

("O-1B status") to the Beneficiary, Mr. Rodolphe Brisset, pursuant to Section 101(a)(15)(O)(i)

of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(O)(i), for employment

as an Assistant Horse Trainer at Mott Thoroughbred Stables, Inc. ("Mott Thoroughbred

Stables"). The decision of Defendant USCIS denying Plaintiff's O-1B Petition is arbitrary,

capricious, contrary to law and past agency practice, and unsupported by substantial evidence.

Consequently, Plaintiff seeks an order reversing the agency denial.

2.      The USCIS decision is arbitrary, capricious, an abuse of discretion, contrary to

law and past agency practice, and is not supported by substantial evidence, because (1) the

Plaintiff provided to USCIS all required information about the Beneficiary and its business, both

in the O-1B Petition at issue and in two prior and virtually identical O-1B petitions filed on

behalf of the Beneficiary that were approved by USCIS, (2) the Plaintiff was not questioned at

any time – regarding either of the prior O-1B petitions filed on behalf of the Beneficiary and

approved by USCIS – about whether the Beneficiary's occupation fell within the O-1

classification of individuals engaged in the arts or a field of creative activity or endeavor, (3) the

Plaintiff received a denial of its O-1B Petition based on USCIS's conclusion – articulated for the

first time regarding the O-1B Petition at issue – that the Plaintiff had not established that the

Beneficiary's duties and field of endeavor could "properly be considered as a creative activity or

endeavor falling within the field of the arts" or the Beneficiary's eligibility under the pertinent

regulations, and (4) USCIS failed to provide a reasonable explanation for the denial, failed to cite

relevant authority for its decision, and failed to "clearly articulate" the reasons for its abrupt

departure from its past and ongoing practice of approving O-1B petitions for horse trainers, other

than stating that prior approvals resulted from "material error" on the part of the agency, in

contravention of internal agency guidance on deference to prior approvals.

     3.     As the U.S. Court of Appeals for the District of Columbia Circuit has explained,

"'an agency changing its course must supply a reasoned analysis indicating that prior policies

and standards are being deliberately changed, not casually ignored.'" *Lone Mountain Processing

v. Sec'y of Labor*, 709 F.3d 1161, 1164 (D.C. Cir. 2013) (quoting *Greater Boston Television

Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)); *see also Philadelphia Gas Works v. FERC*,

989 F.2d 1246, 1250-51 (D.C. Cir. 1993). The failure "to supply such analysis renders the

agency's action arbitrary and capricious." *Id.* (citing *Ramaprakash v. Fed. Aviation Admin.*, 346

F.3d 1121 (D.C. Cir. 2003)). According to the court, "[a]n agency's failure to come to grips with

conflicting precedent constitutes 'an inexcusable departure from the essential requirement of

reasoned decision making.'" *Ramaprakash*, 346 F.3d at 1124-25 (quoting *Columbia Broad. Sys.

v. FCC*, 454 F.2d 1018, 1027 (D.C. Cir. 1971)). *See also Lone Mt. Processing,* 709 F.3d at 1164.

     4.     The agency's action has caused – and will continue to cause – irreparable harm to

the Plaintiff, as the Beneficiary Mr. Brisset had been employed as an Assistant Horse Trainer

with Mott Thoroughbred Stables since 2010, and the Plaintiff's ability to run its business

depends on the contributions of experienced and exceptional horse trainers like the Beneficiary.

Mr. Brisset has been an indispensable employee of the Plaintiff for four years, and the Plaintiff's

horse training business has suffered greatly since the denial of Mr. Brisset's O-1B visa extension.

The devastating impact of the Plaintiff's inability to employ Mr. Brisset is confirmed by William

Mott, President of Mott Thoroughbred Stables. *See* Exhibit ("Exh.") 1. Accordingly, along with

this Complaint for Declaratory and Injunctive Relief, the Plaintiff seeks a preliminary injunction

to enjoin Defendants from denying Plaintiff's O-1B Petition pending review by this Court. The

effective date of USCIS's denial should be postponed pending judicial review, as justice

requires, to prevent further irreparable harm to the Plaintiff.

5.      In addition, the Plaintiff requests limited discovery to ascertain the agency's

grounds for denying the Plaintiff's O-1B Petition where the exact same petition had been

approved two times previously. *See Voyageurs National Park Assoc. v. Norton*, 381 F.3d 759,

766 (8th Cir. 2004) (where an incomplete administrative record may "frustrate effective judicial

review," the court may allow discovery to supplement the agency record); *National Audubon

Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (extra-record investigation may be appropriate

where it is necessary to determine the reasons for the agency's choice).

## II. JURISDICTION

6.      This is a civil action brought pursuant to 5 U.S.C. § 701 *et seq.*, the

Administrative Procedure Act ("APA"), and 28 U.S.C. § 1331 (federal subject matter

jurisdiction), as well as 8 U.S.C. § 1101 *et seq.*, the Immigration and Nationality Act ("INA").

Original jurisdiction is vested in this Court by 8 U.S.C. § 1329 (jurisdiction of the district

courts), 28 U.S.C. § 1346(a)(2) (civil actions against the United States), and 28 U.S.C. § 2201

(declaratory relief), to redress the deprivation of rights, privileges, and immunities secured to the Plaintiff.

### A.    Subject Matter Jurisdiction

7.      Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA provides further that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The APA defines "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Agency action includes the denial of a petition for a Nonimmigrant Worker (Form I-129) filed pursuant to 8 U.S.C. § 1101(a)(15)(O)(i) and 8 C.F.R. § 214.2(o)(3). This action by USCIS is reviewable because it is inconsistent with the agency's own legal standards and settled practice. *See, e.g., Heckler v. Chaney*, 470 U.S. 821, 833 (1985) (holding that administrative agencies are not "free to disregard legislative direction in the statutory scheme that the agency administers"); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971) ("In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements."). The standards to be applied on review are governed by 5 U.S.C. § 706. *Heckler*, 470 U.S. at 828.

8.      The APA does not independently provide a basis for subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). However, the Federal Question Statute, 28 U.S.C. § 1331, confers jurisdiction over a suit that arises under a right of action created by the APA. *See*

*Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review is proper under the APA, the District Court ha[s] jurisdiction under 28 U.S.C. § 1331."). *See also Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Security*, 769 F.3d 1127, 1138 (D.C. Cir. 2014) ("This court has previously recognized that the general federal-question statute confers [federal court] jurisdiction over a similar challenge brought under the Immigration and Nationality Act.… [T]he district court had jurisdiction to hear Fogo de Chao's challenge.") (*citing Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C. Cir. 1986)).

9.      Under the APA, federal courts review administrative actions to determine whether the agency acted arbitrarily or capriciously or abused its discretion. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (citing 5 U.S.C. § 706(2)(A)). The requirement that agency action not be arbitrary and capricious includes an obligation that the agency "examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). Moreover, the agency must take appropriate steps to explain its actions in a manner "that will enable the court to evaluate the agency's rationale" at the time of its decision. *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990).

10.     Three well-established canons of statutory construction also support the Court's assertion of subject matter jurisdiction. *See Kucana v. Holder*, 558 U.S. 233, 251 (2010) (noting that "executive determinations generally are subject to judicial review"). First, congressional intent to limit a court's jurisdiction must be "clear and convincing" in order to preclude judicial review. *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 63-64 (1993); *Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 44 (1991). Second, there is a "strong

presumption" in favor of judicial review of administrative acts. *INS v. St. Cyr*, 533 U.S. 289, 298

(2001); *Kucana*, 558 U.S. at 241. Third, as a general rule, courts resolve ambiguities in

immigration laws in favor of the alien. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987).

These principles support the Court's assertion of subject matter jurisdiction to review the

Plaintiff's claims.

11.     Section 242 of the INA, 8 U.S.C. § 1252, does not deprive this Court of

jurisdiction. 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate

court of appeals in accordance with this section, shall be the sole and exclusive means for

judicial review of an order of removal entered or issued under any provision of this Act[.]" As

the present action is not an action to review a removal order but an action challenging a decision

by the Defendant USCIS to deny a petition for a nonimmigrant O-1B employee, which denial

was arbitrary, capricious, and contrary to law and settled practice, this Court retains original

jurisdiction under the APA and 28 U.S.C. § 1331, as well as for declaratory relief under 28

U.S.C. § 2201.

12.     8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review

either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii)

"any other decision or action of the Attorney General or the Secretary of Homeland Security the

authority for which is specified ... to be in the discretion of the Attorney General or the

Secretary of Homeland Security[.]" Because denial of a Form I-129 Petition for Nonimmigrant

Worker – in this case, an O-1B petition – is neither a judgment regarding the granting of relief

from removal nor a decision or action that is specified to be in the discretion of the Attorney

General or the Secretary of Homeland Security, the Court retains original jurisdiction over this

claim. *See* 8 U.S.C. § 1101(a)(15)(O)(i); 8 C.F.R. § 214.2(o)(3); *see also Kucana*, 558 U.S. at 244-251; *Fogo de Chao (Holdings), Inc.*, 769 F.3d at 1138-39 ("[B]ecause the relevant provision of the Immigration and Nationality Act does not commit the decision whether to grant [a nonimmigrant] petition to the independent discretion of the Attorney General or the Secretary of Homeland Security, and because Congress legislated statutory criteria to be applied in deciding such petitions, the district court had jurisdiction to hear Fogo de Chao's challenge.").

13.     Furthermore, 8 U.S.C. § 1252(a)(2)(B)(ii) does not divest the Court of jurisdiction to review USCIS's denial of the Plaintiff's O-1B Petition. *See Fogo de Chao (Holdings), Inc.*, 769 F.3d at 1138-39. As the Supreme Court has explained, in enacting 8 U.S.C. § 1252(a)(2)(B)(ii) "Congress had in mind ... those [agency decisions] made discretionary by legislation." *Kucana*, 558 U.S. at 246-47. Consequently, the jurisdiction-stripping provision applies only to the "narrower category of decisions where Congress has taken the additional step to *specify* that the sole authority for the action is in the Attorney General's discretion." *Alaka v. Attorney Gen. of U.S.*, 456 F.3d 88, 95 (3d Cir. 2006) (emphasis added). Absent "clear and convincing evidence" of congressional intent specifically to eliminate review of certain administrative actions, the above-cited principles of statutory construction support a narrow reading of the jurisdiction-stripping language at 8 U.S.C. § 1252(a)(2)(B)(ii). *Kucana*, 558 U.S. at 252; *see also Obioha v. Gonzales*, 431 F.3d 400, 405 (4th Cir. 2005) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) should be interpreted narrowly where the narrower interpretation is as likely as the broader interpretation).

14.     The statutory provision authorizing USCIS to grant or deny O-1B petitions nowhere specifies that the agency's decision is "in the discretion" of the Secretary of Homeland

Security. *Compare, e.g.*, 8 U.S.C. § 1101(a)(15)(O)(i) *with* 8 U.S.C. § 1255(a) ("The status of an

alien who was inspected and admitted or paroled into the United States ... may be adjusted by

the Attorney General, *in his discretion* ... to that of an alien lawfully admitted for permanent

residence[.]") (emphasis added). Had Congress intended to strip the courts of authority to review

inherently – as opposed to specifically – discretionary decisions by the agency regarding

immigration matters, it could have clearly indicated its intent. *See Kucana*, 558 U.S. at 248;

*McNary v. Haitian Refugee Center*, 498 U.S. 479, 494 (1991).  Here, unlike in the adjustment of

status context, Congress did not do so. Without such a clear statement of intent, the Court should

not find that Congress meant to divest the federal judiciary of such fundamental power. In

addition, USCIS has promulgated regulations and practices – discussed in Section VI.A. – that

guide its adjudication of O-1B petitions, and which provide the Court the necessary standard for

judicial review of the agency's action under the APA. *See, e.g.*, *M.B. v. Quarantillo*, 301 F.3d

109, 113 (3d Cir. 2002) (finding that regulations governing adjudication of certain visa petitions,

coupled with agency field guidance, provided sufficient guidance for judicial review of agency

action).

### B.    Standing

15.    Because the Plaintiff has suffered an injury in fact – the erroneous denial of its

O-1B extension request and consequent inability to continue to employ a qualified individual to

train its multi-million dollar thoroughbred race horses, which threatens permanent and ongoing

harm to the Plaintiff's business and industry reputation – the Plaintiff has standing to complain.

*See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that standing

requires a plaintiff to show (1) an injury in fact, (2) a causal connection between the injury and

9

the complained-of conduct, and (3) a likelihood that the injury will be redressed by a favorable

decision); *see also* Exh. 1. The Plaintiff has standing as it has "'alleged such a personal stake in

the outcome of the controversy' as to warrant [its] invocation of federal court jurisdiction and to

justify exercise of the court's remedial powers on [its] behalf." *Warth v. Seldin*, 422 U.S. 490,

498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). A favorable decision by this

Court – reversing the agency's O-1B extension denial as arbitrary, capricious, contrary to law,

and not supported by substantial evidence – would grant Plaintiff the relief that it seeks. *See*

*Wilderness Society v. Norton*, 434 F.3d 584, 590 (D.C. Cir. 2006) ("The redressability inquiry

poses a simple question:  If plaintiff[] secured the relief [he] sought … would it redress [his]

injury?").

### C.    **Finality and Ripeness**

16.    The October 8, 2014 decision of the USCIS Administrative Appeals Office

("AAO") upholding the denial of Plaintiff's O-1B Petition constitutes "final agency action" for

purposes of APA review. *See* 5 U.S.C. § 704. The decision "mark[s] the consummation of the

agency's decisionmaking process" and is an action "by which rights or obligations have been

determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78

(1997). Thus, this case is ripe for review because no further administrative appeal of the AAO

decision is available.

17.    Determining ripeness of administrative action for judicial review demands an

evaluation of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties

of withholding court consideration. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S.

803, 808 (2003).  The Plaintiff's claims are fit for judicial decision because the dispute presents

legal questions and there is a "concrete dispute" between the parties. *Id.* at 812. Furthermore, the Plaintiff will continue to suffer significant hardship if no court reviews the agency denial.

18.     The erroneous denial by USCIS of Plaintiff's O-1B extension request, and Plaintiff's consequent inability to employ a comparably exceptional and qualified individual to train its multi-million dollar thoroughbred race horses, is highly likely to result in a substantial loss of earnings, exposed the Plaintiff to a significant risk of liability, and threatened permanent and ongoing harm to the Plaintiff's business and industry reputation. *See* Exh. 1. There is "no other adequate remedy in a court" for the Plaintiff's claims. 5 U.S.C. § 704. And the mere opportunity to submit a new O-1B petition to USCIS, and obtain a decision on that petition, would not relieve the hardship caused by this Court withholding consideration of the Plaintiff's claims that the agency's denial was erroneous and should be reversed. *See Sharkey v. Quarantillo*, 541 F.3d 75, 90 (2d Cir. 2008).

### III. VENUE

19.     Venue is proper under 28 U.S.C. § 1391(e)(3), because this is an action against officers and agencies of the United States in their official capacities, brought in the district where the Defendants reside.

### IV. PARTIES

20.     The Plaintiff, MOTT THOROUGHBRED STABLES, INC., established in 1978, is a business engaged in training thoroughbred racehorses for U.S. and international racing. Plaintiff is the petitioner for an O-1B nonimmigrant visa on behalf of the beneficiary Mr. Rodolphe Brisset for employment as an Assistant Horse Trainer.

21.    The Defendants, LEON RODRIGUEZ, Director, U.S. Citizenship and

Immigration Services ("USCIS"); JEH CHARLES JOHNSON, Secretary, U.S. Department of

Homeland Security ("DHS"); RON ROSENBERG, Chief, USCIS Administrative Appeals

Office ("AAO"); and CARRIE SELBY, Acting Director, USCIS Vermont Service Center

("VSC"), are charged by law with the statutory and regulatory obligation to determine eligibility

for Form I-129 Nonimmigrant Worker Petitions in the O-1B category, pursuant to 8 U.S.C. §

1101(a)(15)(O)(i) and 8 C.F.R §§ 214.2(o)(1)(i), (o)(3)(i), (o)(3)(iv).

### V.  STATEMENT OF FACTS

22.    The O-1B temporary nonimmigrant worker program permits U.S. employers to

petition for and employ a foreign national who, inter alia, has "extraordinary ability in the

sciences, arts, education, business, or athletics which has been demonstrated by sustained

national or international acclaim … and whose achievements have been recognized through

extensive documentation." 8 U.S.C. § 1101(a)(15)(o)(i).

23.    Applicable regulations clarify that individuals "engaged in the field of arts"

include not only principal creators and performers but also "other essential persons such as, but

not limited to, directors, set designers, lighting designers, sound designers, choreographers,

choreologists, conductors, orchestrators, *coaches*, arrangers, musical supervisors, costume

designers, makeup artists, flight masters, stage technicians and *animal trainers*." 8 C.F.R.

§214.2(o)(3)(ii) (emphasis added). The regulations define extraordinary ability in the arts to

mean "distinction." 8 C.F.R. §214.2(o)(3)(ii).

> Distinction means a high level of achievement in the field of arts evidenced by a
> degree of skill and recognition substantially above that ordinarily encountered to

the extent that a person described as prominent is renowned, leading, or well-known in the field of arts.

*Id.* To qualify as an alien of extraordinary ability in the field of arts, an individual must be recognized as being prominent in his or her field of endeavor, as demonstrated either by a significant national or international award or prize, by fulfilling at least three of six documentary criteria evidencing the alien's reputation and achievements, or by "comparable evidence" of distinction where the criteria above do not apply to the individual's occupation. 8 C.F.R. §214.2(o)(3)(iv).

24.     The Plaintiff Mott Thoroughbred Stables first filed a petition for O-1B status on behalf of the Beneficiary, Mr. Rodolphe Brisset, in 2010.  The petition requested that Mr. Brisset be granted O-1B status as an individual of extraordinary ability in the arts, and was supported by extensive documentation of Mr. Brisset's qualifications in this visa category.  This petition was approved and Mr. Brisset's initial O-1B status was valid from May 18, 2010 through December 6, 2012. *See* Exh. 2. In late 2012, Mott Thoroughbred Stables filed a nearly identical petition to extend this O-1B status, which was approved by USCIS and granted through December 5, 2013. *See id.* On November 13, 2013, Mott Thoroughbred Stables filed the O-1B Petition at issue (its third petition for O-1B status on behalf of Mr. Brisset) to extend Mr. Brisset's O-1B status for an additional year. Again, Mott Thoroughbred Stables included extensive documentation of Mr. Brisset's qualifications in this visa category, pursuant to the applicable regulations at 8 C.F.R. § 214.2(o)(3)(iv).

25.     On November 26, 2013, Mott Thoroughbred Stables received a Request for Evidence ("RFE") from USCIS regarding the O-1B Petition, in which USCIS requested evidence

that the Beneficiary "has sustained national or international acclaim and recognition for achievements in the field of expertise" by providing evidence that (1) the Beneficiary has received a significant national or international award, (2) the Beneficiary meets at least three of six forms of evidence of achievement in the field, or (3) where the specified achievement criteria does not apply to the beneficiary's occupation, through "comparable evidence" demonstrating distinction or prominence in the field.  Exh. 3 at 3, 6.

26.    On February 19, 2014, Mott Thoroughbred Stables submitted its response to the RFE, providing further "comparable evidence" of Mr. Brisset's distinction and prominence in the field of horse training to establish that he meets the criteria for an O-1B visa, and including a letter prepared and signed by six expert members of the equine community[1] attesting to Mr. Brisset's distinction and prominence as a horse trainer.  Mott Thoroughbred Stables also explained the unique nature of the thoroughbred racing industry and why the trainer plays an essential and critical role in successful training operations. *See* Exh. 4.

27.    On March 6, 2014, the USCIS Vermont Service Center issued a decision denying the O-1B Petition ("USCIS Denial Decision"). *See* Exh. 5. USCIS referred to the explanations

---

[1]   The letter was signed by Mr. Remi Belloq, former Chief Executive Officer of the National Horsemen's Benevolent and Protective Association and Executive Director for Equine Programming at Bluegrass Community and Technical College, home of the North American Racing Academy; Mr. Denis Blake, Editor in Chief of Horsemen's Journal; Mr. Tommy Azopardi, President of the Groom Elite Program and Vice Chairman of the Texas Racing Hall of Fame; John Velasquez, winner of eight Breeder's Cup races, Kentucky Derby, and Dubai World Cup, all-time leading winner among North American jockeys since 2013, and National Museum of Racing and Hall of Fame member; Angel Cordero, multiple U.S. champion jockey, U.S. Racing Hall of Fame member; and Joel Rosario, leading North American jockey, ranked No. 1 on the National Earnings List for Jockeys in 2013, No. 5 in 2012, and No. 4 in 2011.

and the documentation submitted by Mott Thoroughbred Stables to support the evidentiary

criteria set forth in the regulations, but concluded that the record "does not establish that the

beneficiary has extraordinary ability in the field of endeavor, which has been demonstrated by

sustained national or international acclaim and that his or her achievements have been

recognized in the field through extensive documentation, as required by section 101(a)(15)(O)(i)

of the Act." *Id.* at 5. USCIS also noted that the Plaintiff "submitted no evidence that the

beneficiary has been nominated for, or has been the recipient of a significant national or

international award or prize and the documentation submitted does not meet three of the six other

evidentiary criteria specified in 8 CFR 214.2(o)(3)(iv)(B)." *Id.* USCIS did not address whether

the Plaintiff had demonstrated "comparable evidence" of the Beneficiary's eligibility for O-1B

status.

28.     Finally, in its Denial Decision, USCIS acknowledged that "[p]etitions involving

an extension of status for the same beneficiary with the same petitioner may be given deference,"

but added that USCIS "is authorized to question extension petitions where a substantial change

in circumstances occurs, when relevant facts change from one petition to another, or when the

prior approval may have been based on gross USCIS error. Accordingly, the petition is denied."

*Id.* USCIS did not specify which of the three circumstances prompted its refusal to defer to prior

approvals.

29.     Mott Thoroughbred Stables filed with the USCIS Administrative Appeals Office

("AAO") an appeal of the USCIS Denial Decision. *See* Exh. 6. In its appeal brief, Mott

Thoroughbred Stables referred to an April 23, 2004 memorandum from William Yates, U.S.

Department of Homeland Security Associate Director of Operations, to all USCIS Service

15

Center Directors and Regional Directors ("Yates Memo"),[2] in support of its argument that USCIS policy dictates that deference should be given to a prior determination that an individual is eligible for a particular nonimmigrant classification, where an extension of that nonimmigrant petition's validity involves the same parties and the same underlying facts. Mott Thoroughbred Stables reiterated that the Yates Memo clarifies that the only instances in which a prior approval should not be given deference are those in which "(1) it is determined that there was a material error with regard to the previous petition approval; (2) a substantial change in circumstances has taken place; or (3) there is new material information that adversely impacts the petitioner's or beneficiary's eligibility" and that "[m]aterial error, changed circumstances, or new material information must be clearly articulated in the resulting request for evidence or decision denying the benefit sought." Exh. 6 at 1.

30.    Mott Thoroughbred Stables noted that although USCIS did not specify the reason for its refusal to defer to two prior approvals, since neither "changed circumstances" nor "new material information" appeared to form the basis of agency's decision, the petitioner was "left to guess" that "material error" formed the basis for this departure from established practice. *Id.* Mott Thoroughbred Stables also noted that the Yates Memo clarified that a "'*material error* involves the misapplication of an objective statutory or regulatory requirement to the facts at hand'" and that "'adjudicators should not question prior adjudicators' determinations that are

---

[2]    *See* "The Significance of a Prior CIS Approval of a Nonimmigrant Petition in the Context of a Subsequent Determination Regarding Eligibility for Extension of Petition Validity," at http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2004/readjud_042304.pdf and at Exh. 8.

subjective,'" such as the prior adjudicator's evaluation of the beneficiary's qualifications. *Id.* at 2 (emphasis in original). Mott Thoroughbred Stables emphasized that "[t]wo prior adjudicators did think that the beneficiary's accomplishments were extraordinary" and that the Yates Memo "specifically cautioned against reversing subjective determinations to avoid inconsistency." *Id.*

31.     On October 8, 2014, the AAO upheld the USCIS Denial Decision and dismissed the appeal ("AAO Decision"). *See* Exh. 7. The AAO Decision acknowledged the Yates Memo's directive that USCIS give deference to prior determinations of eligibility, but reiterated that deference need not be given if "it is determined that there was a material error with regard to the previous petition approval" (confirming the Plaintiff's "guess" that USCIS's refusal to defer to two prior O-1B approvals was based on what USCIS believed to be its own prior material error). *Id.* at 4. In addition, the AAO concluded – for the first time since the initial O-1B petition was filed on behalf of the Beneficiary in 2010 – that "the beneficiary's occupation does not fall within the O-1B classification requested on the petition, *thus, any approval in the arts would involve a material error*." *Id.* (emphasis added).

32.     The AAO explained that "the mere fact that USCIS, *by mistake or oversight*, approved a visa petition on one occasion does not create an automatic entitlement to the approval of a subsequent petition for renewal of that visa." *Id.* (emphasis added). The AAO reiterated that USCIS had reviewed the record of proceeding based upon the plain language of the six regulatory criteria set forth at 8 C.F.R. § 214.2(o)(3)(iv)(B), and had concluded that the Plaintiff did not establish the Beneficiary's eligibility for O-1B status. *See id.* (The AAO did not address why USCIS did not review the record based upon the "comparable evidence" standard set forth at 8 C.F.R. § 214.2(o)(3)(iv)(C), as posited by the Plaintiff.) Finally, the AAO noted that "[i]f

17

the previous petition was approved in the arts based on the same minimal evidence of the beneficiary's eligibility, the approval would constitute a material error on the part of the director." *Id.*

33.    The AAO Decision continued, again finding for the first time that the Plaintiff "did not establish that the beneficiary is primarily involved in a creative activity or endeavor, such that he can be classified as an alien of extraordinary ability in the arts." *Id.* at 5. The AAO explained that while 8 C.F.R. § 214.2(o)(3)(ii) specifically includes animal trainers within the field of the arts, "not all types of animal trainers can properly be classified as within the field of the arts," and that the nature of racehorse training is such that it does not qualify as among the group of creative workers covered by this regulation. *Id.*  Finally, the AAO asserted – again, for the first time since the initial O-1B petition was filed in 2010 – that the Plaintiff may not rely on "comparable evidence" as set forth in 8 C.F.R. § 214.2(o)(3)(iv)(C) because "the petitioner's attempt to classify the beneficiary's field as in the arts is improper." *Id.* at 8. The AAO concluded that the Plaintiff had not established that the Beneficiary's duties "which consist primarily of training horses, or the beneficiary's field of endeavor, competitive horse racing, can properly be considered as a creative activity or endeavor falling within the field of the arts," and that the Plaintiff did not establish the Beneficiary's eligibility under the regulatory criteria as well. *Id.*

34.    No further administrative appeal or motion challenging USCIS's final decision denying the Plaintiff's O-1B Petition is currently pending.

## VI.  CAUSE OF ACTION

### A.    Standards for O-1B Extraordinary Ability Petitions

35.    Section 101(a)(15)(O)(i) of the INA provides for the classification of qualified nonimmigrant foreign nationals who have "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim … and whose achievements have been recognized through extensive documentation." 8 U.S.C. § 1101(a)(15)(O)(i).  The applicable regulations clarify that individuals "engaged in the field of arts" include not only principal creators and performers but also "other essential persons such as … animal trainers." 8 C.F.R. § 214.2(o)(3)(ii).

36.    As noted above, the applicable regulations define extraordinary ability in the arts to mean "distinction," which in turn is defined as "a high level of achievement in the field of arts evidenced by a degree of skill and recognition substantially above that ordinarily encountered to the extent that a person described as prominent is renowned, leading, or well-known in the field of arts." 8 C.F.R. §214.2(o)(3)(ii).  To qualify as an alien of extraordinary ability in the field of arts, an individual must be recognized as being prominent in his or her field of endeavor, as demonstrated either by a significant national or international award or prize, by fulfilling at least three of six criteria evidencing the alien's reputation and achievements, or by "comparable evidence" of distinction where the criteria above do not apply to the individual's occupation. 8 C.F.R. §214.2(o)(3)(iv).

37.    A petitioning U.S. employer must file with USCIS a Form I-129, Petition for Nonimmigrant Worker on a prospective employee's behalf, and documentation supporting the petition, including (among other items) a contract or summary of the terms under which the

worker will be employed, an explanation of the worker's anticipated activities, and

documentation supporting the requested classification as an alien of extraordinary ability in a

specific area. 8 C.F.R. § 214.2(o)(2)(i), (o)(3)(iv). The regulations governing review and

adjudication of O-1B petitions note that USCIS not only will review and evaluate whether the

beneficiary's qualifications meet the requirements of "extraordinary ability" in the selected area,

but also that USCIS "shall consider all the evidence submitted and such evidence as may be

independently required to assist in the adjudication." 8 C.F.R. § 214.2(o)(6)(i).

**B.**     **Grounds for Relief**

38.     USCIS is tasked with determining a noncitizen's eligibility for classification as an

individual of extraordinary ability.  8 C.F.R. § 214.2(o)(6)(i).  And although the agency enjoys

broad discretion to grant, deny, or revoke immigrant and nonimmigrant petitions, its discretion is

not unfettered.  According to the U.S. Supreme Court,

> Though an agency's discretion is unfettered at the outset, if it announces and
> follows – by rule or by settled course of adjudication – a general policy by which
> its exercise of discretion will be governed, an irrational departure from that policy
> (as opposed to an avowed alteration of it) could constitute action that must be
> overturned as "arbitrary, capricious, [or] an abuse of discretion" within the
> meaning of the Administrative Procedure Act, 5 U.S.C. 706(2)(A).

*INS v. Yang*, 519 U.S. 26, 32 (1996).  The U.S. Court of Appeals for the District of Columbia

Circuit recently held that, where USCIS's judgment "was neither adequately explained in its

decision nor supported by agency precedent[,]" it "fails the requirement of reasoned

decisionmaking under arbitrary and capricious review." *Fogo de Chao (Holdings), Inc.,* 769 F.3d

at 1141-42 (citing *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012)) (internal quotations

omitted).

39.     The D.C. Circuit also has explained, "'an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.'" *Lone Mountain Processing*, 709 F.3d at 1164 (quoting *Greater Boston Television Corp.*, 444 F.2d at 852). "Failing to supply such analysis renders the agency's action arbitrary and capricious." *Id.* (citing *Ramaprakash*, 346 F.3d 1121). In *Ramaprakash*, the D.C. Circuit described an agency's responsibility to articulate a change in an established policy or pattern:

> Agencies are free to change course as their expertise and experience may suggest or require, but when they do so, they must provide a "reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970); *see also Philadelphia Gas Works v. FERC*, 989 F.2d 1246, 1250-51 (D.C. Cir. 1993). An agency's failure to come to grips with conflicting precedent constitutes "an inexcusable departure from the essential requirement of reasoned decision making." *Columbia Broad. Sys. v. FCC*, 454 F.2d 1018, 1027 (D.C. Cir. 1971).

*Ramaprakash*, 346 F.3d at 1124-25. *See also Lone Mt. Processing,* 709 F.3d at 1164.  *See generally Friedman v. Sebelius*, 686 F.3d 813 (D.C. Cir. 2012); *Manin v. NTSB*, 627 F.3d 1239, 1242-43 (D.C. Cir. 2011); *Jicarilla Apache Nation v. Dep't of the Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010); *Dillmon v. NTSB*, 588 F.3d 1085, 1089-96 (D.C. Cir. 2009); *Williams Gas Processing-Gulf Coast Co. v. FERC*, 475 F.3d 319, 329 (D.C. Cir. 2006); *New York Cross Harbor R.R. v. Surface Transp. Bd.*, 374 F.3d 1177, 1183 (D.C. Cir. 2004); *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 33 (D.D.C. 2012).

40.     Deference to established patterns of approval is the rule rather than the exception. According to the Supreme Court,

> A settled course of behavior embodies the agency's informed judgment that, by
> pursuing that course, it will carry out the policies committed to it by Congress. ...
> There is, then, at least a presumption that those policies will be carried out best if
> the settled rule is adhered to. From this presumption flows the agency's duty to
> explain its departure from prior norms. ... Whatever the ground for the departure
> from prior norms, however, it must be clearly set forth so that the reviewing court
> may understand the basis of the agency's action and so may judge the consistency
> of that action with the agency's mandate.

*Atchison v. Wichita Bd. of Trade*, 412 U.S. 800, 807-08 (1973) (citing *Secretary of Agriculture v.*

*United States*, 347 U.S. 645, 653 (1954)).  Although an agency "is free to alter its past rulings

and practices even in an adjudicatory setting," *Airmark Corp. v. FAA*, 758 F.2d 685, 691-92

(D.C. Cir. 1985), courts require the agency to "display awareness that it *is* changing position"

and not to "depart from a prior policy *sub silentio* or simply disregard rules that are still on the

books." *FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1811 (2009). Reasoned

decisionmaking requires the agency to acknowledge and provide an adequate explanation for its

departure from established precedent. *See Fox Television*, 129 S. Ct. at 1811 ("[T]he agency

must show that there are good reasons for the new policy.").

41.     The Yates Memo provided internal agency guidance regarding such a settled

course of behavior by clarifying that the only instances in which a prior approval should not be

given deference are those in which "(1) it is determined that there was a material error with

regard to the previous petition approval; (2) a substantial change in circumstances has taken

place; or (3) there is new material information that adversely impacts the petitioner's or

beneficiary's eligibility" and that "[m]aterial error, changed circumstances, or new material

information *must be clearly articulated* in the resulting request for evidence or decision denying

the benefit sought." Exh. 8 at 1-2 (emphasis added).  Indeed, the D.C. Circuit has recently

articulated that "a pattern of visa grants ... obligate the agency to provide a 'reasoned explanation for ... treating similar situations differently,' ... – or at least something more reasoned than confessing a decade-long pattern of 'material and gross error.'" *Fogo de Chao (Holdings), Inc.*, 769 F.3d at 1144 (citing *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995)).

42.     Where the agency departs from a pattern of approvals not only for a specific petitioner and beneficiary but across many petitioners and beneficiaries for a particular occupation in a particular visa category, *see* examples at Exh. 9, the agency is especially obligated to "clearly articulate" the material error, changed circumstances, or new material information that would justify such a departure.  "'[T]he core concern underlying the prohibition of arbitrary and capricious agency action' is that agency 'ad hocery' is impermissible." *Ramaprakash*, 346 F.3d at 1130 (quoting *Pacific N.W. Newspaper Guild, Local 82 v. Nat'l Labor Relations Bd.*, 278 U.S. App. D.C. 210, 877 F.2d 998, 1003 (D.C. Cir. 1989)). Unexplained and inconsistent departures from established patterns frustrate petitioners' ability to rely on consistent analysis of their cases, which reduces overall confidence in the agency's adjudicatory mandate: "'We have it on high authority that 'the tendency of the law must always be to narrow the field of uncertainty.' O.W. Holmes, *The Common Law* 127 (1881)." *Id.*

43.     Here, the Plaintiff filed a Form I-129 Petition at the USCIS Vermont Service Center, along with all required supporting documentation and the appropriate filing fees, as it had done with its initial and subsequent O-1B visa petitions on behalf of the Beneficiary.  The O-1B Petition at issue was "true and correct," 8 C.F.R. § 214.2(o)(8)(iii)(A)(2), and did not differ from the two prior O-1B Petitions filed by the Plaintiff on behalf of the Beneficiary, both

of which were approved by USCIS. *See* Exh. 2. Furthermore, the Beneficiary's occupation does not meaningfully differ from many other horse trainers in a variety of competitive equine fields (including thoroughbred racing, steeplechase, three-day eventing, dressage, and show jumping, for example) that have sought and been granted O-1B "extraordinary ability in the arts" visa status. *See* examples at Exh. 9.

44.     USCIS offered no justification for its abrupt change of course in determining not only that the Beneficiary no longer qualified for O-1B status, but that "the beneficiary's occupation does not fall within the O-1B classification requested on the petition, thus, any approval in the arts would involve a material error." USCIS offered no justification for its abrupt change of course in determining that the Plaintiff had not established that the Beneficiary's duties, "which consist primarily of training horses, or the beneficiary's field of endeavor, competitive horse racing, can properly be considered as a creative activity or endeavor falling within the field of the arts." Exh. 7 at 8. These assertions might carry more weight had USCIS not previously approved many O-1B visas – including those filed by the Plaintiff – for horse trainers in a wide range of competitive equine fields. *See* Exhs. 2, 9. As a result of this Denial Decision, future petitioners who seek to file an initial O-1B petition on behalf of a horse trainer, or an extension of a previously-approved O-1B on behalf of a horse trainer, cannot rely on consistent adjudication of these petitions or on a "narrow ... field of uncertainty." *Ramaprakash*, 346 F.3d at 1130 (quoting O.W. Holmes, *The Common Law* 127 (1881)). The USCIS denial of the Plaintiff's O-1B Petition is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to past agency practice.

45.     The Plaintiff's consequent inability to hire the highly-qualified trainer it selected to serve its equally highly-decorated thoroughbred horses has caused it significant and ongoing harm, including a loss of revenue, increased liability, and the threat of permanent harm to its business and reputation in the industry, nationally and internationally. *See* Exh. 1. The denial has effectively left the Plaintiff without *any* trainers able to meet the extraordinarily high standards required to train thoroughbred horses of this caliber. Similarly situated petitioners run the same risk of harm.

46.     If USCIS intends to cease approving O-1B visa petitions filed on behalf of horse trainers, even though scores of similarly situated petitions have been filed and approved within the past five years, *see* Exh 9, USCIS did not articulate the basis for this new policy or clearly articulate its departure from past practice by reference to law, regulation, or other past decisions. In *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), the Supreme Court emphasized a "simple but fundamental rule of administrative law," that an agency must set forth clearly the grounds on which it has acted.  Here, USCIS has broken "the general rule requiring that the agency explain the policies underlying its action." *Atchison,* 412 U.S. at 807.

47.     The arbitrary and capricious standard of review set forth in 5 U.S.C. § 706(2)(A) applies to USCIS's decision to deny the Plaintiff's O-1B Petition. USCIS failed to provide a reasoned explanation or substantial evidence in support of its decision, and it departed from past practice without clearly articulating its justification for that departure.  Such a decision amounts to an abuse of discretion under 5 U.S.C. § 706(2)(A).  The agency's abrupt departure from past practice has had a devastating impact on the Plaintiff's business, as the Plaintiff is unable to continue to employ its selected highly qualified horse trainer.  As a result, the Plaintiff has

suffered – and continues to suffer – a loss of revenue and a threat of permanent harm to its business. *See* Exh. 1. Absent this Court's intervention, the Plaintiff will continue to experience serious financial and reputational harm.

## VII.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court:

A.    Declare unlawful and set aside Defendant USCIS's decision to deny the Plaintiff's O-1B Petition;

B.    Order Defendant USCIS to promptly readjudicate Plaintiff's O-1B Petition in consideration of and with deference to prior approvals;

C.    Order Defendant USCIS to postpone the effective date of USCIS's denial of the Plaintiff's O-1B Petition and grant temporary status and visa approval to the Beneficiary Mr. Rodolphe Brisset, to prevent further irreparable injury, pending conclusion of the review proceedings in this Court under 5 U.S.C. § 702;

D.    Grant reasonable attorney's fees and costs of court under the Equal Access to Justice Act;

E.    Grant such other and further relief as this Court deems proper.

Respectfully submitted this 6th day of March 2015.

_____/s/_____*Thomas K. Ragland*_____
Thomas K. Ragland
D.C. Bar No. 501021
BENACH RAGLAND LLP
1333 H Street, NW – Suite 900 West
Washington, DC  20005
Tel: (202) 644-8600
Fax: (202) 644-8615
tkragland@benachragland.com
*Counsel for Plaintiff*