## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| ) |  |
| MOTT THOROUGHBRED STABLES, INC., ) |  |
| ) |  |
| Plaintiff, ) |  |
| ) |  |
| v. ) | Civil Action No. 15-333 (RBW) |
| ) |  |
| LEON RODRIGUEZ, <u>et al.</u>, ) |  |
| ) |  |
| Defendants. ) |  |
| ) |  |

_____

### MEMORANDUM OPINION

The plaintiff, Mott Thoroughbred Stables, Inc., filed this civil action against the defendants, Leon Rodriguez, the Director of the U.S. Citizenship and Immigration Services ("USCIS"); Jeh Charles Johnson, the Secretary of the U.S. Department of Homeland Security; Ron Rosenberg, the Chief of the Administrative Appeals Office for the USCIS; and Carrie Selby, the Acting Director of the USCIS Vermont Service Center ("USCIS Service Center"),[1] seeking declaratory and injunctive relief to redress the denial of the plaintiff's petition for nonimmigrant status for an alien beneficiary ("beneficiary") pursuant to the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1101 (2012). Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ 1-2, 11-12, 26. Without the agency's approval of the plaintiff's petition, the plaintiff is unable to employ the beneficiary as an Assistant Horse Trainer in its thoroughbred racehorse training facilities. <u>See</u> <u>id.</u> ¶ 1. Currently before the Court is the Plaintiff's Motion for Preliminary Injunction ("Mot."). After careful consideration of the parties' submissions,[2] as well

---

[1] For the purposes of this Memorandum Opinion, the Court will refer to the defendants collectively as the "agency."

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of [the] Plaintiff's Motion for Preliminary

(continued . . .)

as the parties' oral arguments presented during the March 25, 2015 hearing on the plaintiff's

motion, the Court concludes that it must deny the plaintiff's motion.

## I.    BACKGROUND

### A.  Statutory Background

The Act authorizes an employer to file a petition ("O-1 Petition") requesting that the

United States confer temporary, nonimmigrant status upon a beneficiary, who "has extraordinary

ability in the sciences, arts, education, business, or athletics which has been demonstrated by

sustained national or international acclaim or, with regard to motion picture and television

productions a demonstrated record of extraordinary achievement, and whose achievements have

been recognized in the field through extensive documentation, and seeks to enter the United

States to continue work in the area of extraordinary ability."  8 U.S.C. § 1101(a)(15)(O)(i); see

also 8 C.F.R. § 214.2(o)(1)(i) (2012) ("Under section 101(a)(15)(O) of the Act, a qualified alien

may be authorized to come to the United States to perform services relating to an event or events

if petitioned for by an employer.  Under this nonimmigrant category, the alien may be classified

under section 101(a)(15)(O)(i) of the Act as an alien who has extraordinary ability in the

sciences, arts, education, business, or athletics, or who has a demonstrated record of

extraordinary achievement in the motion picture or television industry."); id. § 214.2(o)(2)(i)

("[A] petitioner seeking to classify an alien as . . . [a section 1101(a)(15)(O)(i) or section

1101(a)(15)(O)(ii)] nonimmigrant shall file a petition on Form I-129, Petition for a

Nonimmigrant Worker.").[3]  Specifically, the field of the

---

(. . . continued)
Injunction ("Pl.'s Mem."); and (2) the Defendants' Opposition to [the] Plaintiff's Motion for Preliminary Injunction ("Defs.' Opp'n").

[3]  The petition itself "may only be filed by a United States employer, a United States agent, or a foreign employer through a United States agent."  8 C.F.R. 214.2(o)(2)(i).

> [a]rts includes any field of creative activity or endeavor such as, but not limited to, fine arts, visual arts, culinary arts, and performing arts. [Beneficiaries] engaged in the field of arts include not only the principal creators and performers but other essential persons such as, but not limited to, directors, set designers, lighting designers, sound designers, choreographers, choreologists, conductors, orchestrators, coaches, arrangers, musical supervisors, costume designers, makeup artists, flight masters, stage technicians, and animal trainers.

Id. § 214.2(o)(3)(ii).  And with respect to the arts, "extraordinary ability" is synonymous with "distinction."  8 U.S.C. § 1101(a)(46).  "Distinction means a high level of achievement in the field of arts evidenced by a degree of skill and recognition substantially above that ordinarily encountered to the extent that a person described as prominent is renowned, leading, or well-known in the field of arts."  8 C.F.R. § 214.2(o)(3)(ii).

To demonstrate that the beneficiary has an extraordinary ability in the arts, the petitioner must provide evidence that the beneficiary is "recognized as being prominent in his or her field of endeavor."  Id. § 214.2(o)(3)(iv); see also id. §§ 214.2(o)(2)(ii)-(iii).  The petitioner may present "[e]vidence that the alien has been nominated for, or has been the recipient of, significant national or international awards or prizes in the particular field . . . ."  Id. § 214.2(o)(3)(iv)(A). The petitioner may also attach "[a]t least three of the following forms of documentation" to the petition:

> (1) Evidence that the [beneficiary] has performed, and will perform, services as a lead or starring participant in productions or events which have a distinguished reputation as evidenced by critical reviews, advertisements, publicity releases, publications contracts, or endorsements;

> (2) Evidence that the [beneficiary] has achieved national or international recognition for achievements evidenced by critical reviews or other published materials by or about the individual in major newspapers, trade journals, magazines, or other publications;

> (3) Evidence that the [beneficiary] has performed, and will perform, in a lead, starring, or critical role for organizations and establishments that have a distinguished reputation evidenced by articles in newspapers, trade journals, publications, or testimonials;

(4) Evidence that the [beneficiary]  has a record of major commercial or critically acclaimed successes as evidenced by such indicators as title, rating, standing in the field, box office receipts, motion pictures or television ratings, and other occupational achievements reported in trade journals, major newspapers, or other publications;

(5) Evidence that the [beneficiary] has received significant recognition for achievements from organizations, critics, government agencies, or other recognized experts in the field in which the [beneficiary] is engaged. Such testimonials must be in a form which clearly indicates the author's authority, expertise, and knowledge of the [beneficiary]'s achievements; or

(6) Evidence that the [beneficiary] has either commanded a high salary or will command a high salary or other substantial remuneration for services in relation to others in the field, as evidenced by contracts or other reliable evidence

Id. § 214.2(o)(3)(iv)(B).  As a last resort, if the aforementioned forms of documentation "do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence in order to establish the beneficiary's eligibility."  Id. § 214.2(o)(3)(iv)(C).

In contrast, the evidentiary standard for obtaining temporary, nonimmigrant status for a beneficiary with extraordinary ability in the "field of science, education, business, or athletics," is different than that for the "arts."  See id. § 214.2(o)(3)(ii).  "Extraordinary ability" in these fields "means a level of expertise indicating that the person is one of the small percentage who have arisen to the very top of the field of endeavor."  Id.  The petitioner must demonstrate that the beneficiary has "sustained national or international acclaim and recognition for achievements in the field of expertise."  Id. § 214.2(o)(3)(iii); see also id. §§ 214.2(o)(2)(ii)-(iii).  To do so, the petitioner may present evidence of the beneficiary's "[r]eceipt of a major, internationally recognized award . . . ."  Id. § 214.2(o)(3)(iii)(A).  The petitioner may also submit "[a]t least three of the following forms of documentation" with the petition:

(1) Documentation of the [beneficiary's] receipt of nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(2) Documentation of the [beneficiary's] membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(3) Published material in professional or major trade publications or major media about the [beneficiary], relating to the [beneficiary's] work in the field for which classification is sought, which shall include the title, date, and author of such published material, and any necessary translation;

(4) Evidence of the [beneficiary's] participation on a panel, or individually, as a judge of the work of others in the same or in an allied field of specialization to that for which classification is sought;

(5) Evidence of the [beneficiary's] original scientific, scholarly, or business-related contributions of major significance in the field;

(6) Evidence of the [beneficiary's] authorship of scholarly articles in the field, in professional journals, or other major media;

(7) Evidence that the [beneficiary] has been employed in a critical or essential capacity for organizations and establishments that have a distinguished reputation;

(8) Evidence that the [beneficiary] has either commanded a high salary or will command a high salary or other remuneration for services, evidenced by contracts or other reliable evidence.

Id. § 214.2(o)(3)(iii)(B).  Again, if the aforementioned forms of documentation "do not readily apply to the beneficiary's occupation [in the fields of science, education, business, or athletics], the petitioner may submit comparable evidence in order to establish the beneficiary's eligibility." Id. § 214.2(o)(3)(iii)(C).

**B.  Factual Background**

In 2010 and 2012, the plaintiff filed successful O-1 Petitions on behalf of the beneficiary, by asserting that the beneficiary was an individual of extraordinary ability in the art of thoroughbred racehorse training.  Compl. ¶¶ 1, 2, 4-5, 24, 43.  On November 13, 2013, the plaintiff filed a third O-1 Petition, seeking the extension of the beneficiary's temporary, nonimmigrant status.  Id.  Nearly two weeks later, the USCIS Service Center sent the plaintiff a

Request for Evidence, requesting additional proof of the beneficiary's extraordinary ability in the arts.  See id. ¶ 25.  The plaintiff obliged and sent the USCIS Service Center the requested information.  See id. ¶ 26; see also Compl., Exhibit ("Ex.") 4 (Response to Request for Evidence Case No. EAC-14-031-552223 ("Resp. to Request for Evid.")).[4]

The USCIS Service Center denied the plaintiff's third O-1 Petition on March 6, 2014. Compl. ¶ 27; see also Compl., Ex. 5 (March 6, 2014 Letter to Mott Thoroughbred Stables, Inc. ("USCIS Decision")).  The USCIS Service Center rejected the O-1 Petition on the ground that there was insufficient evidence of the beneficiary's extraordinary ability in the arts pursuant to either 8 C.F.R. § 214.2(o)(3)(iv)(A) or 8 C.F.R. § 214.2(o)(3)(iv)(B).[5]  Compl., Ex. 5 (USCIS Decision) at 3-5; see also Compl. ¶ 27.  The USCIS Service Center also explained to the plaintiff that although "[p]etitions involving an extension of status for the same beneficiary with the same petitioner may be given deference," it was "authorized to question extension petitions when a substantial change in circumstances occurs, when relevant facts change from one petition to another, or when the prior approval may have been based on gross USCIS error."  Compl., Ex. 5 (USCIS Decision) at 5; see also Compl. ¶ 28.  But the USCIS Service Center did not specify which of these three circumstances was applicable.  Compl., Ex. 5 (USCIS Decision) at 5; see also Compl. ¶ 28.

The plaintiff appealed the USCIS Service Center's decision to the USCIS Administrative Appeals Office ("USCIS Appeals Office"), Compl. ¶ 29, solely on the basis that the USCIS Service Center failed to articulate clearly its reasons for failing to give deference to, and deviating from, its prior approvals of the plaintiff's O-1 Petitions, Compl., Ex. 6 (Brief in

---

[4]  The exhibit did not have page numbers after page 6, but the Court will cite to the document as if all pages in the exhibit had been numbered, based upon the order in which they were submitted to the Court.

[5]  The USCIS Service Center failed to consider any evidence under 8 C.F.R. § 214.2(o)(3)(iv)(C).

Support of Appeal ("USCIS Appeals Office Br.")) at 1-2.  Specifically, the plaintiff complained

that the USCIS Service Center did not explain whether its about-face was because of: (1)

"material error[s] with regard to the previous petition approval[s]"; (2) "substantial change[s] in

circumstances" to the petitioner's or beneficiary's eligibility for the nonimmigrant classification

sought; or (3) "new material information that adversely impacts the petitioner's or beneficiary's

eligibility."  Id. at 1 (citing Compl., Ex. 8 (April 23, 2004 USCIS Interoffice Memorandum by

William R. Yates ("USCIS Interoffice Mem.") at 1-2 (providing guidance on deference to prior

USCIS petition approvals))).

The USCIS Appeals Office upheld the USCIS Service Center's decision,[6] Compl. ¶ 31;

see also Compl., Ex. 7 (October 8, 2014 Letter to Mott Thoroughbred Stables, Inc. ("USCIS

Appeals Office Decision")) at 2, reasoning that thoroughbred racehorse training was not a field

of "art" contemplated under 8 C.F.R. § 214.2(o)(3)(ii) because it was not a "field of 'creative

activity or endeavor'" and thus, the plaintiff's "request to classify the beneficiary as an alien of

extraordinary ability in the arts [was] . . . improper," Compl., Ex. 7 (USCIS Appeals Office

Decision) at 5-6.  Instead, the ruling concluded that the plaintiff should have sought to have the

beneficiary classified as an alien with "extraordinary ability in the sciences, education,

business[,] or athletics."  Id. at 6 (citing 214.2(o)(3)(ii)).  The USCIS Appeals Office explained

that the standard for showing extraordinary ability in one of these fields is intended to be more

demanding than the field of arts, id. (citing administrative and legislative authorities), and noted

that the plaintiff did not contest the USCIS Service Center's findings under either 8 C.F.R. §

214.2(o)(3)(iv)(A) or 8 C.F.R. § 214.2(o)(3)(iv)(B), Compl., Ex. 7 (USCIS Appeals Office

Decision) at 7.  The USCIS Appeals Office finally explained that 8 C.F.R. § 214.2(o)(3)(iv)(C)

---

[6] The USCIS Appeals Office conducted de novo review of the USCIS's decision to deny the plaintiff's O-1 Petition.

evidence need not be considered because examination of such evidence is reserved for "situations where the criteria relating to the beneficiary's field do not readily apply to the beneficiary's occupation, and not where criteria for the beneficiary's field exist, but the petitioner instead chooses to file under the provisions relating to a different field than the one in which the beneficiary works."  Compl., Ex. 7 (USCIS Appeals Office Decision) at 7-8.  The plaintiff initiated this case requesting that the Court set aside the agency action, which it deems is arbitrary and capricious.  E.g., Compl. ¶ 47.

## II.   STANDARD

A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation marks omitted).  "The power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised."  Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (internal quotation marks omitted).  "To warrant preliminary injunctive relief, the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction."  Chaplaincy, 454 F.3d at 297.

The District of Columbia Circuit has applied a "sliding-scale approach" in evaluating the preliminary injunction factors.[7]  See, e.g., Sherley v. Sebelius, 644 F.3d 388, 392-93 (D.C. Cir.

---

[7]  Several members of the Circuit have read Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008), to cast doubt on the continued validity of the sliding-scale approach.  See Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J, joined by Henderson, J., concurring) ("[U]nder the Supreme Court's precedents, a movant cannot obtain a preliminary injunction without showing both a likelihood of success and a likelihood of irreparable harm, among other things."); see also Sherley, 644 F.3d at 393 ("Like our colleagues, we read Winter at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing

(continued . . .)

2011).  Under this approach,

> [i]f the movant makes an unusually strong showing on one of the factors, then it
> does not necessarily have to make as strong a showing on another factor.  For
> example, if the movant makes a very strong showing of irreparable harm and
> there is no substantial harm to the non-movant, then a correspondingly lower
> standard can be applied for likelihood of success.  Alternatively, if substantial
> harm to the nonmovant is very high and the showing of irreparable harm to the
> movant very low, the movant must demonstrate a much greater likelihood of
> success.  It is in this sense that all four factors must be balanced against each
> other.

Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009) (internal

quotation marks and citations omitted).

## III.    ANALYSIS

### A.  Substantial Likelihood Of Success

The plaintiff attacks the denial of its O-1 Petition as arbitrary and capricious on the basis

that the agency failed to "'clearly articulate' the reasons for the abrupt departure from its past

and ongoing practice of approving [O-1 Petitions] for horse trainers as anything more than prior

'material error' . . . in violation of internal [USCIS] guidance on deference to prior approvals."

Pl.'s Mem. at 11; see also id. at 10-12.  The plaintiff's position has no merit.

The Administrative Procedure Act ("APA") entitles a party aggrieved by agency action to

seek judicial review.  5 U.S.C. § 702 (2012).  Under the APA, courts are required to "hold

unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."  Id. § 706(2)(A).  However,

"[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not

---

(. . . continued)
requirement for a preliminary injunction.'" (quoting Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring))).  But the
Circuit has had no occasion to decide this question because it has not yet encountered a post-Winter case where a
preliminary injunction motion survived the less rigorous sliding-scale analysis.  See id. at 393 ("We need not wade
into this circuit split today because, as in Davis, . . . in this case a preliminary injunction is not appropriate even
under the less demanding sliding-scale analysis.").  Thus, because it remains the law of this Circuit, the Court must
employ the sliding-scale analysis here.

to substitute its judgment for that of the agency." <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v.</u>

<u>State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983).  The agency must "examine the relevant

data and articulate a satisfactory explanation for its action including a rational connection

between the facts found and the choice made." <u>Id.</u> (internal quotation marks omitted).  The

reviewing court "will uphold a decision of less than ideal clarity if the agency's path may

reasonably be discerned." <u>Pub. Citizen, Inc. v. FAA</u>, 988 F.2d 186, 197 (D.C. Cir. 1993)

(internal quotation marks omitted).

      Here, in accordance with USCIS policy, the agency afforded no deference to its prior

approvals of the plaintiff's O-1 Petitions. <u>See</u> Compl., Ex. 8 (USCIS Interoffice Mem.) at 1 ("A

case where a prior approval of the [O-1] [P]etition need not be given deference includes where . .

. it is determined that there was a material error with regard to the previous petition approval . . .

.").  The agency admitted that it had committed material error in approving the plaintiff's

previous O-1 Petitions because the plaintiff failed to explain how the beneficiary's field of

thoroughbred racehorse training qualifies as a field in the "arts," as that term is defined in the

relevant federal regulations. <u>See</u> Compl., Ex. 7 (USCIS Appeals Office Decision) at 4-6; <u>see</u>

<u>also</u> Pl.'s Mem. at 7-8 (recognizing USCIS Administrative Appeals Office's reason for denying

the plaintiff's O-1 Petition).  Specifically, the agency found that the plaintiff "failed to

demonstrate how the beneficiary's duties could be considered a 'creative activity or endeavor.'"

Compl., Ex. 7 (USCIS Appeals Office Decision) at 5; <u>see also</u> 8 C.F.R. § 214.2(o)(3)(ii)

(defining "arts" as including "any field of creative activity or endeavor").  The agency

distinguished "animal training" for purposes of "animal acts and circuses" and "animal training"

for competitive horse racing, Compl., Ex. 7 (USCIS Appeals Office Decision) at 5, opining that

such a distinction was warranted because "the beneficiary's specific duties [outlined in the

plaintiff's O-1 Petition] show that [the beneficiary] will not create, perform, or serve as essential personnel to a 'creative activity,' but instead will train racehorses, which . . . are 'high performance athletes,'" id. at 6.

The plaintiff has proffered no explanation as to why the beneficiary's field of thoroughbred racehorse training qualifies as a field in the "arts."  Although the denial of the latest O-1 Petition is a departure from the earlier, favorable adjudications of the plaintiff's O-1 Petitions, that alone is an insufficient basis to disturb or set aside the agency action.[8] E.g., Boi Na Braza Atlanta, LLC v. Upchurch, No. 04-cv-2007-L, 2005 WL 2372846, at *9 (N.D. Tex. Sept. 27, 2005) ("[T]he court rejects [the] [p]laintiff's argument that the decisions to deny the petitions in this case were improper because the [USCIS] in the past (and recently) granted extensions for certain other beneficiaries."), aff'd, 194 F. App'x 248 (5th Cir. 2006); Texas A&M Univ.-Corpus Christi v. Upchurch, No. 03-cv-0275-BF, 2003 WL 21955866, at *2 (N.D. Tex. July 8, 2003) ("The fact that [the beneficiary], in his first O-1 visa application, was the fortunate beneficiary of a more lenient adjudication under 8 C.F.R. § 214.2(O)(3)(iii) does not prevent the defendants from correcting that previous error."), aff'd, 99 F. App'x 556, 557 (5th Cir. 2004); see also Royal Siam Corp. v. Chertoff, 484 F.3d 139, 148 (1st Cir. 2007) ("The mere fact that the agency, by mistake or oversight, approved a specialty occupation visa petition on one occasion does not create an automatic entitlement to the approval of a subsequent petition for renewal of that visa.").  The Court, therefore, finds that the agency's rationale for denying the

---

[8] For the first time, during the hearing on the plaintiff's motion, the plaintiff advanced the argument that the agency's departure from its past practice of qualifying thoroughbred racehorse training as a field in the "arts" requires it to undertake a notice-and-comment process.  The plaintiff directed the Court to no case authority on point.  Nor could it, as the case authority appears to suggest otherwise.  See, e.g., Perez v. Mortgage Bankers Ass'n, _ U.S. _, _, 135 S. Ct. 1199, 1204 (2015) ("[T]he notice-and-comment requirement 'does not apply' to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" (quoting 5 U.S.C. § 553(b)(A))).  The Court will not preclude the plaintiff from revisiting and briefing the issue when this case will inevitably be resolved through summary judgment.

plaintiff's most recent O-1 Petition is reasonable, as there is no indication that the agency did not

consider all relevant facts or that its denial was not a product of fair and reasoned judgment.[9]

See, e.g., Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) ("[T]he agency's

interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with

the regulation." (internal quotation marks omitted)); Nat'l Wildlife Fed. v. Browner, 127 F.3d

1126, 1129 (D.C. Cir. 1997) ("[C]ourt[s] accord[] substantial deference to an agency's

interpretations of its own regulations." (citing Auer v. Robbins, 519 U.S. 452, 461 (1997)));

Consarc Corp. v. U.S. Treasury Dep't, Office of Foreign Assets Control, 71 F.3d 909, 915 (D.C.

Cir. 1995) ("[A]n agency's application of its own regulations[] receives '"an even greater degree

of deference than the [Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837

(1984)] standard, and must prevail unless plainly inconsistent with the regulation.'" (quoting

Consarc Corp. v. Iraqi Ministry, 27 F.3d 695, 702 (D.C. Cir. 1994))).  Accordingly, the Court

concludes that the plaintiff does not have a likelihood, let alone a substantial one, of succeeding

on the merits in challenging the propriety of the agency's denial of the plaintiff's most recent O-

1 Petition under the APA.

### B.  Existence Of Irreparable Harm

The plaintiff's purported irreparable harm comes in two forms: "risk of a serious loss of

earnings" and "risk of . . . loss of reputation and standing in [the] highly competitive

[horseracing] industry."  Pl.'s Mem. at 14 (citing Compl., Ex. 1 (Mott Decl.) ¶ 8); see also id.

---

[9]  The reasonableness of the agency's decision is bolstered by the statutory prescription of a nonimmigrant
classification for beneficiaries with extraordinary ability in the field of athletics.  See 8 U.S.C. § 1101(a)(15)(O)(i); 8
C.F.R. §§ 214.2(o)(1)(i), (o)(3)(ii); see also Compl., Ex. 4 (Resp. to Request for Evid.) at 17 ("Not unlike the
coaching staff of a football team (i.e.[,] [c]oach, [a]ssistant [c]oaches, etc.) the success of a racehorse[,] which is
measured in wins and earnings, is typically a direct reflection of the word and talent of the racing team—led by the
trainer ([c]oach) and assistant trainer ([a]ssistant [c]oach)." (ellipses omitted)); id. at 20 ("Through his association
with [the plaintiff], [the beneficiary] works with and has worked with some of the best racehorses in our sport . . . ."
(emphasis added)).

(seeking preliminary injunction to "preserve" the plaintiff's "business and reputation" (citing Compl., Ex. 1 (Mott Decl.) ¶ 10)).  The plaintiff's purported forms of harm suffer from several legal flaws.

The District of Columbia Circuit has resoundingly rejected the notion that economic loss constitutes irreparable harm, Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1507 (D.C. Cir. 1995) ("recoverable economic losses are not considered irreparable"); see also Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) ("economic loss does not, in and of itself, constitute irreparable harm"), unless the plaintiff can show that the economic loss "threatens the very existence of the [plaintiff]'s business," Wis. Gas. Co., 758 F.2d at 674.  Here, since 2007, the plaintiff has earned "over $70.5 million."  Compl., Ex. 4 (Resp. to Request for Evid.) at 5; id. at 11, 13, 19 (same); see also Compl., Ex. 1 (Mott Decl.) ¶ 7 (explaining that  the beneficiary has "earned millions of dollars" for the plaintiff "[o]ver the past four years").  And the plaintiff boasts that in 2013, "it had race winnings in excess of $10 million, making it one of the most successful racing operations in the United States."  Compl., Ex. 1 (Mott. Decl.) ¶ 3.  Without the benefit of any additional financial information, such as operating costs and the like, the plaintiff can hardly be said to be teetering on the edge of financial ruin absent the granting of a preliminary injunction when its business does not rely exclusively on the beneficiary.  See Pl.'s Mem. at 13 ("[T]he [p]laintiff's business depends entirely on the extraordinary abilities of its horse trainers." (emphasis added)).

Next, the Court questions the "certainty" and "imminence" of the alleged irreparable, economic loss.  Chaplaincy, 454 F.3d at 297.  First, it is possible that the alleged irreparable harm may never occur.  The plaintiff has not foreclosed the possibility that its other horse

trainers[10] can either compensate for any loss in earnings without the beneficiary's services or that the other trainers could match or even outperform the beneficiary in the upcoming thoroughbred horse racing seasons, thereby equaling or eclipsing the earnings attributable to the beneficiary. Second, the plaintiff seemingly concedes that suitable replacements for the beneficiary exist, if the beneficiary were required to leave the country. See Mott. Decl. ¶ 6 ("The [plaintiff's] racehorses in training . . . are extremely valuable, with many of them worth in excess of $1 million each. I can only entrust them to the very best horse trainers." (emphasis added)). Although finding such replacements may be costly and time-consuming for the plaintiff, these inconveniences are not the types of harm that are contemplated as being the bases for granting a preliminary injunction.[11]

Further, notwithstanding the alleged extraordinary ability of the beneficiary to train racehorses, there is no guarantee that any of the racehorses the beneficiary has trained would win any future races, and thus, any alleged irreparable harm could still occur. See Compl., Ex. 1 (Mott Decl.) ¶ 8 (observing that the thoroughbred horse racing industry is "highly competitive"). Thus, a preliminary injunction is particularly ill-suited here because it would not necessarily redress the alleged irreparable harm. See Wis. Gas Co., 758 F.2d at 674 ("the alleged harm [must] directly result from the action which the movant seeks to enjoin" (emphasis added)); Hunter v. FERC, 527 F. Supp. 2d 9, 15 (D.D.C. 2007) (denying preliminary injunction where the

---

[10] The plaintiff "operate[s] large-scale training facilities with well over 100 horses at different tracks across the country," and thus has to "delegate significant responsibility to [its] assistant trainers." Compl., Ex. 4 (Resp. to Request for Evid.) at 4 (emphasis added); see also id. at 10, 18 (same).

[11] The plaintiff has not explained why replacements for the beneficiary cannot be found, let alone that a search for replacements has even been attempted, and if so, has been unsuccessful. In this respect, the alleged irreparable harm is caused, at least in part, by the plaintiff's own inaction. See Safari Club Int'l v. Salazar, 852 F. Supp. 2d 102, 123 (D.D.C. 2012) ("well-settled that a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted" (internal quotation marks omitted)).

plaintiff failed to demonstrate that relief would "alleviate the threat of irreparable harm . . . to his business" (citing <u>Ass'n of Flight Attendants-CWA, AFL-CIO v. Pension Benefit Guar. Corp.</u>, 372 F. Supp. 2d 91, 101 (D.D.C. 2005))).

Finally, the plaintiff's purported harms are carefully cabined to the "<u>risk</u>" of a "serious loss of earnings" and a "loss of reputation and standing" in the horseracing industry.  Pl.'s Mem. at 14 (citing Mott Decl. ¶ 8) (emphasis added).  A "risk" of these injuries, however, does not mean that they will "in fact occur."  <u>Wis. Gas Co.</u>, 758 F.3d at 674 ("Bare allegations of what is likely to occur are of no value.").  For example, any assertion of reputational harm is belied by the plaintiff's very existence.  The plaintiff was established in 1978, and since then it has been "in the business of training racehorses for the highest levels of U.S. and international racing." Compl., Ex. 1 (Mott Decl.) ¶ 3.  The plaintiff hired the beneficiary in 2010, <u>id.</u> ¶ 4, meaning that the plaintiff ran a successful business operation—and presumably built a reputation for winning many races domestically and internationally,[12] <u>see id.</u> ¶ 2 (describing successes); <u>id.</u> ¶ 10 (the plaintiff is "one of the most successful thoroughbred racing operations in the United States")—in the nearly <u>thirty-two years before</u> it hired the beneficiary, <u>see id.</u> ¶ 2 (the plaintiff's namesake, President William Mott, proclaiming that that he is "one of the top ten all-time winning trainers in North America"); <u>see also</u> Compl., Ex. 4 (Resp. to Request for Evid.) at 5 ("[The plaintiff] <u>consistently</u> stables Horse of the Year candidates, Triple Crown entrants, and graded-stakes winners." (emphasis added)).  Any alleged reputational harm arising from the absence of the beneficiary's services is therefore speculative at best.  <u>See</u> <u>Trudeau v. FTC</u>, 384 F. Supp. 2d 281, 297 (D.D.C. 2005) ("reputational injury can be used to establish irreparable harm in certain

---

[12]  It strikes the Court as odd to contend that the plaintiff's inability to employ the beneficiary would result in economic "losses."  In light of the purported successes of the plaintiff, it would be more appropriate to say that the plaintiff is less likely to reap as much economic "gain" as it otherwise could with the beneficiary's assistance.

circumstances . . . [but] the showing of reputational harm must be concrete and corroborated, not merely speculative"), <u>aff'd</u>, 456 F.3d 178 (D.C. Cir. 2006).  To the extent there is any reputational harm to the plaintiff from its failure to win <u>as many</u> races in the future as it would with the beneficiary's assistance, that harm would more likely than not be minimal.  <u>See LG Elecs. U.S.A., Inc. v. Dep't of Energy</u>, 679 F. Supp. 2d 18, 35 (D.D.C. 2010) (denying preliminary injunction, in part, because alleged reputational harm was buoyed by the plaintiff's positive "worldwide reputation" that it already had).  In short, the purported harms are too speculative, and to the extent they would occur only minimal, and thus underserving of the extraordinary remedy of a preliminary injunction.  <u>Chaplaincy</u>, 454 F.3d at 297 (explaining that harm must "be both certain and great," and "[also] be actual and not theoretical").  Accordingly, this factor weighs against issuing a preliminary injunction.

### C.  Balance Of The Equities

The plaintiff contends that the balance of equities "overwhelmingly favor[s] a grant of preliminary injunctive relief" because without such relief, the plaintiff could potentially suffer the irreparable harm mentioned above, and the beneficiary could be "deprived" of his livelihood.[13]  Pl.'s Mem. at 16.  Nevertheless, these potential hardships are not the result of the agency's wrongdoing.  As the Court explained above, the agency did not act arbitrarily and capriciously in denying the plaintiff's O-1 Petition.  And where, as here, "the Court has determined that [the] plaintiff[] ha[s] no likelihood of ultimately succeeding on the merits, interim harm to [the] defendant[]"—in the form of a preliminary injunction—"is unwarranted." <u>RCM Techs., Inc. v. U.S. Dep't of Homeland Sec.</u>, 614 F. Supp. 2d 39, 47 (D.D.C. 2009).  As is

---

[13]  The plaintiff has provided no basis for the Court to suspect that given the beneficiary's alleged extraordinary ability, the beneficiary would be unable to land on his feet without working for the plaintiff.

"often" the case, the Court concludes that this factor is "a wash." Id. (quoting Delaware & H. Ry. Co. v. United Transp. Union, 450 F.2d 603, 630 (D.C. Cir. 1971)).[14]

### D.  Public Interest

The Court agrees with the plaintiff that there is a general public interest in granting temporary, nonimmigrant status so that certain beneficiaries can provide their "extraordinary ability" in the arts in the United States.  See Pl.'s Mem. at 16 (arguing that the beneficiary cannot be a part of the United States equine community without nonimmigrant status).  But a preliminary injunction would not advance that interest here, as the Court has already found that the agency's rejection of the O-1 Petition was neither arbitrary nor capricious by concluding that the plaintiff did not demonstrate that the beneficiary had extraordinary ability in the arts.

More importantly, a preliminary injunction would not advance the public interest because it would condone the plaintiff's attempt to fit the proverbial round peg into the square hole.  The plaintiff has not sought to classify the beneficiary's alleged extraordinary ability to train racehorses in the proper field.  In other words, the plaintiff should have—and there is no indication that it could not have—sought temporary, nonimmigrant classification of the beneficiary as one who has extraordinary ability in the field of "athletics."  See Compl., Ex. 7 (USCIS Appeals Office Decision) at 6 ("[T]he beneficiary's specific duties [outlined in the plaintiff's O-1 Petition] show that he will not create, perform, or serve as essential personnel to a 'creative activity,' but instead will train racehorses, which . . . are 'high performance athletes.'"); Compl., Ex. 4 (Resp. to Request for Evid.) at 17 ("Not unlike the coaching staff of a football team (i.e.[,] [c]oach, [a]ssistant [c]oaches, etc.) the success of a racehorse[,] which is measured in wins and earnings, is typically a direct reflection of the work and talent of the racing team—

---

[14]  At best, this factor weighs minimally in favor of a preliminary injunction.

led by the trainer ([c]oach) and assistant trainer ([a]ssistant [c]oach)." (ellipses omitted)); id. at 20 ("Through his association with [the plaintiff], [the beneficiary] works with and has worked with some of the best racehorses in our sport . . . ." (emphasis added)).  The plaintiff cannot circumvent the higher standard of demonstrating "extraordinary ability" in the field of "athletics," by attempting to shoehorn thoroughbred racehorse training into the field of "arts." See Temporary Alien Workers Seeking H-1B, O, and P Classifications Under the Immigration and Nationality Act, 59 Fed. Reg. 41818, 41819-20 (Aug. 15, 1994) ("For clarification, the final rule contains a definition of the term 'extraordinary ability in the field of arts' and a separate definition of 'extraordinary ability in the field of science, education, business, or athletics.' . . . Due to the high standards for the O-1 category in the fields of science, business, education, and athletics, it would be very difficult for prospective petitioners to find a group of individuals who were of similar standing with the beneficiary."); id. at 41820 ("Under the [Act], the standard for an O-1 artist is significantly lower than the standard for an alien of extraordinary ability in the fields of science, education, business, or athletics.  Petitioners are required to establish only that the O-1 artist is prominent in his or her field of endeavor.  Eligibility for O-1 classification in the field of arts is not limited to those aliens who have reached the very top of their professions as is required in the fields of science, business, education, or athletics.").  This factor, like the others, militates against issuance of preliminary injunctive relief.

## IV.    CONCLUSION

For the foregoing reasons, the plaintiff's motion for a preliminary junction will be denied.[15]

---

[15]  The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.

**SO ORDERED** on this 8th day, April 2015.

REGGIE B. WALTON
United States District Judge